**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

_____

|  |  |
|---|---|
| ) | |
| **RSM US WEALTH MANAGEMENT LLC**          ) | |
| ) | |
| ) | |
| **Plaintiff,**          ) | **Civil Action No. _____** |
| ) | |
| **v.**          ) | **JURY TRIAL DEMANDED** |
| ) | |
| **THOMAS PACILIO and**          ) | |
| **DANIEL BESSE**          ) | |
| ) | |
| ) | |
| **Defendants.**          ) | |
| ) | |

_____

## COMPLAINT

Plaintiff RSM US Wealth Management LLC ("RSMW"), through its undersigned

counsel, hereby brings this Complaint against Defendants Thomas Pacilio ("Pacilio") and Daniel

Besse ("Besse"), and states as follows:

## NATURE OF ACTION

1.      RSMW is a wealth management business, providing financial advice to clients

across the nation.  RSMW's clients include individuals, families, closely-held business owners,

and executives of both large and small companies.  RSMW was previously known as McGladrey

Wealth Management, LLC ("MWM").

2.      For a number of years, Pacilio and Besse operated a financial advisory business

known as Clapboard Hill Advisors, LLC, in Westport, Connecticut.  In late 2014, pursuant to the

terms of an Asset Purchase Agreement ("APA") between MWM, Clapboard Hill Advisors, LLC,

and Pacilio and Besse, RSMW purchased the assets of Pacilio and Besse's business for

1

substantial consideration.  The APA included, among other important provisions, an express Covenant Not to Compete or Solicit Business.

3.      Following the asset purchase, Pacilio and Besse began working at RSMW as at-will employees.  Pacilio and Besse executed Employment Agreements with RSMW.  Those Employment Agreements included provisions expressly prohibiting the solicitation of RSMW clients for one year following voluntary or involuntary termination by RSMW, as well as provisions expressly prohibiting the use of trade secrets or other confidential information learned or obtained while working at RSMW.

4.      RSMW recently terminated the employment of Pacilio and Besse.

5.      Upon being terminated, Pacilio and Besse immediately proceeded to breach their contractual obligations to RSMW under both the APA and their Employment Agreements—and to additionally violate numerous federal and state laws.  To RSMW's knowledge, their conduct continues to this day.

6.      First, in derogation of the APA, their Employment Agreements, and other applicable laws, Pacilio and Besse have launched a new wealth management business that directly competes with RSMW and have solicited numerous RSMW clients to become clients of their new business.  Consequently, a number of RSMW clients have already been diverted away from RSMW.  In the process, Pacilio and Besse have also disparaged RSMW.

7.      Second, in derogation of federal and state trade secrets and computer crime laws, as well as their Employment Agreements, Pacilio and Besse have misappropriated RSMW's proprietary data, including valuable and confidential client information by, among other things, accessing RSMW client data in a computerized database on multiple occasions after their termination.

8.      Third, in derogation of the APA and federal and state law, Pacilio and Besse are now conducting business under the name "Clapboard Hill Private Wealth," and are trumpeting that name in their solicitations.  That name is confusingly similar to the name of their previous business acquired by RSMW, "Clapboard Hill Advisors, LLC."

9.      RSMW seeks preliminary and permanent injunctive relief, liquidated damages, damages incurred by RSMW as a result of Pacilio and Besse's conduct, costs and reasonable attorneys' fees, punitive damages, and other relief as the Court may deem appropriate.

## THE PARTIES

10.     RSMW is a Delaware limited liability company registered to conduct business in Connecticut, and is a subsidiary of RSM US LLP ("RSM").

11.     Pacilio, an individual, resides at 60 Clapboard Hill Road, Westport, Connecticut 06880, and works in Connecticut.

12.     Besse, an individual, resides at 73 Ferndale Road, Easton, Connecticut 06612, and works in Connecticut.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 1836(c), and 15 U.S.C. § 1121 over RSMW's federal claims under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1267 over RSMW's state law claims because they arise out of the same operative facts as the federal claims.

14.     This Court has personal jurisdiction over Pacilio and Besse because they reside in Connecticut; they were employed by RSMW in Connecticut; and in connection with their

conduct in Connecticut, they violated the Defend Trade Secrets Act, the Computer Fraud and Abuse Act, the Lanham Act, state statutory and common law, breached certain contractual obligations owing to RSMW, and caused tortious injury to RSMW.

15.     Venue is proper under 28 U.S.C. § 1391(b) because Pacilio and Besse reside in this district and events giving rise to RSMW's claims occurred in this district.

## FACTS

### Pacilio and Besse's Employment with RSMW

16.     Pursuant to the APA, RSMW acquired the assets of Pacilio and Besse's then-existing wealth management business, Clapboard Hill Advisors, LLC.  In exchange, Pacilio and Besse were paid substantial consideration and obtained employment at RSMW.

17.     One of the critical assets purchased by RSMW in the transaction were Pacilio and Besse's relationships with clients of Clapboard Hill Advisors, LLC.  "[C]lient lists and databases" were specifically singled out as assets being acquired by RSMW in Section 2.1(a) of the APA.  RSMW paid fair value for "all right, title and interest" in "client lists and databases (including former and current clients) and prospective client lists and databases."  APA § 2.1-2.1(a)(i).  The APA also included a schedule, Schedule 5.18, listing by name present and former clients of Pacilio and Besse's business that RSMW was acquiring.  And, in Section 7.6, the APA further required Pacilio and Besse to attempt to persuade those clients to enter into engagement contracts with RSMW.

18.     Acquiring these client relationships was at the core of the transaction, and as such, a central provision of the APA was Section 8.1, "Covenant Not to Compete or Solicit Business."  So critical was this provision that it expressly recognized that RSMW "would not have entered into this Agreement absent the provisions of this Section 8.1."

19.     Under Section 8.1(a), Pacilio and Besse agreed that they could not compete with RSMW or attempt to solicit RSMW clients for a period of four years from the closing date of the APA.  In particular, they agreed that they shall not

> own any interest in, manage, operate, control, participate in, advise, consult or otherwise carry on, perform services for, directly or indirectly, any business competitive with Seller's business conducted as of the Closing or induce, directly or indirectly, any client or other business relationship to terminate or adversely modify its relationship with Seller or Buyer or assist any Person in any way to do, or attempt to do, anything prohibited by this Section 8.1 . . . .

20.     They further agreed under Section 8.1(a) that, for a period of four years from the closing date of the APA, they would not

> perform any action or activity, make any statements or communications, written or verbal (or cause or assist other Persons to do any of the foregoing) that defames, disparages or in any way materially criticizes the Seller, Buyer or any of their respective Affiliates or partners or employees or take any action designed or intended to have the effect of discouraging any of the client, employee, vendor and others having business relations with Seller.

21.     These provisions, like the others in the APA, were carefully crafted, and the APA was subject to substantial negotiation between the parties and their counsel.

22.     Pacilio and Besse agreed, under Section 8.1(b), that the restrictions contained in the Covenant Not to Compete or Solicit Business "are reasonable and enforceable and material aspects of the consideration for this Agreement and any other agreements expressly contemplated hereby."  To the extent a court determines any restrictions under Section 8.1 to be unenforceable, Pacilio and Besse agreed that Section 8.1 would be modified to be effective for the maximum period of time, over the maximum geographical area, and to the maximum extent in all other respects as to which it may be enforceable.  They "consent[ed] and agree[d] to any

such reformation of the restrictions to the maximum extent of enforceability as determined by any court of competent jurisdiction."

23.     In addition, Pacilio and Besse agreed that RSMW would be entitled to seek— among other things—injunctive or other equitable relief in the event of any breach or threatened breach of Sections 8.1 and 8.2:

> Buyer and each of the Seller Parties further acknowledge and agree that in the event of any breach or threatened breach of this Section 8.1, Section 8.2 or Section 13.2, the business interests of Buyer will be irreparably injured, the full extent of the damages to Buyer will be impossible to ascertain, monetary damages will not be an adequate remedy for Buyer and Buyer will be entitled to seek to enforce this Agreement by a temporary, preliminary or permanent injunction (not to exceed a time limit of four (4) years from the Closing Date) or other equitable relief, without the necessity of posting bond or security, which each of the Seller Parties expressly waive.

24.     The APA further specifically addressed the name of Pacilio and Besse's prior business, Clapboard Hill Advisors, LLC, and any derivative or similar names.  First, under Section 8.2(a), Pacilio and Besse agreed to prohibit the "continued operation and use of the name 'Clapboard Hill Advisors, LLC' . . . (or any derivative or variation thereof, or other name that is confusingly similar . . .), and to discontinue such operations and use of name," except for purposes of winding up its business affairs.

25.     Second, Pacilio and Besse agreed under Section 8.2(b) that they

> shall not, and shall cause each of their respective Affiliates not to, directly or indirectly, use, or license other Persons to use, the term[] "Clapboard" . . . or any term or phrase incorporating such terms or any term or phrase confusingly similar with any of the foregoing as a trademark, service mark, trade dress, logo, slogan, trade name, corporate name or Internet domain name or otherwise as an identifier of the source of any goods or services.

26.     Section 13.5 of the APA provides that the APA "shall be governed by and construed in accordance with the internal Laws . . . of the State of Delaware."

27.     Pacilio and Besse were each parties to the APA and each signed it.  The closing of the APA was on or about December 10, 2014.

28.     Pacilio and Besse also each entered into RSMW's standard Employment Agreement.  They both signed their Employment Agreements, which contained identical terms, on December 10, 2014.

29.     The Employment Agreement conditioned Pacilio and Besse's offers of employment and continued employment on their acceptance of the agreements and covenants therein.  Further, it was a condition of the APA that Pacilio and Besse each execute their Employment Agreements.

30.     Paragraph 6 of the Employment Agreement explicitly prohibits the use of trade secrets or other "Confidential Information" that was learned or obtained while employed by RSMW (then MWM):

> I acknowledge that as a result of my employment by MWM I will be given access to certain trade secrets and Confidential Information (defined herein) pertaining to the property, business, and operations of MWM, its affiliates, clients and certain Other Parties.  In consideration of my employment or continued employment and my access to such trade secrets and Confidential Information, I agree that I shall not at any time or in any manner, directly or indirectly, during or after my employment with MWM, use or disclose to any party other than MWM and its affiliates any trade secrets or other Confidential Information that I learned or obtained while an employee of MWM or any of its predecessors.

31.     Paragraph 7 of the Employment Agreement explicitly prohibits Pacilio and Besse from soliciting RSMW clients for one year following termination:

> In consideration of my employment or continued employment by MWM and access to the Confidential Information, and in

7

consideration of the unique knowledge, skill and training and to which I will be given access as an employee of MWM, I agree that throughout my employment with MWM and for a one-year period following voluntary or involuntary termination of my employment, I will not for myself or others, either directly in my individual capacity or indirectly as an employee, associate, independent contractor or agent of another, solicit, divert, take away or conduct any financial planning, financial consulting, investment advisory, securities brokerage or insurance business with, or attempt to solicit, divert, take away or conduct any financial planning, financial consulting, investment advisory, securities brokerage or insurance business with, any of MWM's clients, customers or accounts.

32.   Paragraph 9 of the Employment Agreement further sets forth the remedies

available to RSMW in the event of Pacilio or Besse's breach of Paragraphs 6 or 7:

Employee acknowledges that money damages resulting from any violations of Paragraphs 6 and 7 will be difficult to ascertain and calculate and will be inadequate to remedy the harm done, and therefore, Employee agrees that MWM will be entitled to injunctive relief for any violations of Paragraphs 6 or 7.  Employee further agrees that, to the extent that injunctive relief does not remedy the harm resulting from any violations of Paragraphs 6 or 7, MWM may seek actual money damages or any other remedies available to it at law.  In lieu of actual money damages, Employee agrees that MWM, in its discretion, may seek liquidated damages determined as follows: 100% of the gross revenue applicable to each client, customer or account that is the subject of any violations of Paragraphs 6 or 7 and paid or payable for the month prior to Employee's termination, times twelve (x 12) to arrive at estimated annualized revenue, and times two hundred and fifty percent (x 250%).  Employee agrees that this liquidated damages provision shall not be construed as payment to avoid Employee's obligations under Paragraphs 6 or 7 or as an alternative performance to the obligations under Paragraphs 6 or 7, and that MWM may seek injunctive relief to preclude violations of Paragraphs 6 or 7.

33.   Paragraph 10 of the Employment Agreement further provides: "Employee agrees

that if MWM is required to pursue enforcement of the provisions of paragraphs 6, 7 or 9 in court,

MWM will be entitled to recover its costs, attorneys' fees and litigation expenses."

34.     Paragraph 13 of the Employment Agreement states that the Agreement "shall be interpreted and governed by the laws of the State of Minnesota."

35.     Paragraph 17 of the Employment Agreement further provides: "I further agree that if any court of competent jurisdiction finds any of the restrictions set forth in paragraphs 7 or 8 to be overly broad and unenforceable, the restriction shall be interpreted to extend only over the maximum time period, geographic area, or range of activities, clients or employees that such court deems enforceable."

36.     By accepting RSMW's offer of employment and executing the Agreement as a condition of such employment, Pacilio and Besse agreed to the provisions in Paragraphs 6, 7, 9, 10, 13, and 17.  Per Paragraph 19 of the Agreement, each of the aforementioned paragraphs "shall survive the voluntary or involuntary termination" of the Agreement and Pacilio and Besse's employment.

**Pacilio and Besse's Unlawful Actions Following Their Termination**

37.     RSMW terminated the employment of Pacilio and Besse, effective March 26, 2018.

38.     Almost immediately following their termination, Pacilio and Besse undertook a series of coordinated steps to willfully, intentionally, and deliberately breach their contractual obligations to RSMW and to violate numerous federal and state laws.

39.     This pattern of continuing unlawful conduct began with Pacilio and Besse misappropriating confidential data belonging to RSMW.  This included client information highly valued by RSMW.

40.     On information and belief, Pacilio, acting in concert with Besse, took client data belonging to RSMW on or about the day his employment was terminated.  Further, after being

9

terminated, Pacilio and Besse remotely accessed a computerized database to misappropriate additional client data belonging to RSMW.  Pacilio, Besse, or others acting at their direction accessed the system on numerous occasions following their termination, without RSMW's authorization.

41.     The data illegally taken and/or obtained by Pacilio and Besse included trade secrets that were highly valued by RSMW and constituted confidential data that RSMW took steps to keep secret.  This included, but was not limited to, both (1) data concerning RSMW clients who had been developed at considerable effort and expense independent of Pacilio and Besse's prior business, including RSM partners and employees, as well as (2) data concerning RSMW clients whose relationships were assets that RSMW specifically purchased for substantial expense as part of the APA.

42.     Utilizing the client information that they misappropriated from RSMW, Pacilio and Besse have launched a competitor to RSMW—which they have dubbed Clapboard Hill Private Wealth—and undertaken a widespread bid to solicit RSMW clients for the purpose of diverting them from RSMW to their new wealth management enterprise.

43.     Their solicitation has included sending letters on or around March 28, 2018 to numerous RSMW clients asking them to sign on with their new business.  The letter states that their decision to leave RSMW "was focused on how we can continue to better serve our clients and execute the fiduciary standard to be expected," and that "[w]e look forward to deepening and expanding our relationship[s]" with these clients.  The letters were accompanied by more than 40 pages of materials meant to facilitate the transfer of business over to Pacilio and Besse.  In addition, Pacilio and Besse have called and emailed numerous RSMW clients to encourage them

to move from RSMW to the new entity.  Pacilio and Besse contacted multiple clients on several occasions in an effort to attract them to Clapboard Hill Private Wealth.

44.     Further, during their attempts to divert clients away from RSMW, Pacilio and Besse have disparaged RSMW.  For example, Pacilio and Besse have told clients that RSMW is unable to meet their needs, and that Pacilio and Besse were unable to fulfill their fiduciary responsibilities while at RSMW.  Alluding to their own termination, they told at least one RSMW client that "the real compliance issue is that RSM investment options are not sufficient to serve clients."

45.     Again, these actions by Pacilio and Besse have targeted both (1) RSMW clients who had been developed at considerable effort and expense independent of Pacilio and Besse's prior business, including RSM partners and employees, as well as (2) RSMW clients whose relationships were assets that RSMW specifically purchased for substantial expense as part of the APA.

46.     Brazenly, Pacilio and Besse's new wealth management business uses the name and logo "Clapboard Hill Private Wealth."  This name is clearly derivative of and confusingly similar to "Clapboard Hill Advisors, LLC," which is the trademark that RSMW expressly purchased under the APA.  The APA also expressly prohibits Pacilio and Besse from using the term "Clapboard" as a trademark, trade name, or corporate name for the provision of any client services.

47.      Taken together or separately, Pacilio and Besse's actions are causing irreparable injury to RSMW.  They threaten the immediate loss of business.  Indeed, they already have caused RSMW the loss of clients, and have negatively affected RSM client relationships in other

lines of business.  The longer Pacilio and Besse are permitted to engage in their wrongful conduct, the worse the injury to RSMW will become.

48.     Further, there is no question that Pacilio and Besse are on notice that their actions violate the law.  Indeed, by letter dated March 28, 2018, RSMW specifically warned Pacilio that his solicitation of clients and misappropriation of data violated the APA, his Employment Agreement, and other applicable laws.  The letter demanded that he cease such conduct, reminded him of his legal obligations, and required an attestation concerning the return and deletion of misappropriated data.  Pacilio never provided any such attestation.  The letter told Pacilio that RSMW "reserves all legal rights and remedies."  A similar letter was sent the same day to Besse.

49.     Pacilio and Besse's actions constitute, among other things, violations of the Defend Trade Secrets Act, the Computer Fraud and Abuse Act, and the Lanham Act; breaches of the APA; breaches of their Employment Agreements; violations of the Connecticut Uniform Trade Secrets Act, the Connecticut statute for computer-related offenses, and the Connecticut Unfair Trade Practices Act; tortious interference with contract and prospective business relations; and breach of fiduciary duties.

## COUNT I
### Violation of the Defend Trade Secrets Act (DTSA)

50.     RSMW incorporates the allegations contained in paragraphs 1 through 49 above as if fully set forth herein.

51.     RSMW has invested, and continues to invest, considerable amounts of time and energy in acquiring, creating, and developing confidential and trade secret information, including client lists and the client information contained in computerized databases.

52.     This confidential and trade secret information relates to products or services used in, or intended for use in, interstate or foreign commerce.  RSMW provides wealth management services to clients across the nation and in various states, and maintains confidential and trade secret information related to clients from various states.  Pacilio and Besse have misappropriated confidential and trade secret information that relates to services being provided to clients both here in Connecticut and in various states across the nation.

53.     This confidential and trade secret information derives significant independent economic value, actual or potential, to RSMW from not being generally known to or readily ascertainable by proper means by its competitors.

54.     At all relevant times, RSMW has taken measures to safeguard the secrecy of its confidential and trade secret information, including by requiring its employees to enter into agreements to maintain their confidentiality, and password-protecting its computer systems, networks, and databases.

55.     The above-described information constitutes trade secrets pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1839(3).

56.     Pacilio and Besse have willfully and maliciously misappropriated RSMW's trade secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*

57.     Pacilio and Besse used RSMW's trade secrets without RSMW's express or implied consent, when they knew or had reason to know that they had acquired the information under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

58.     As a direct and proximate result of the wrongful actions of Pacilio and Besse, RSMW has been caused to suffer irreparable harm, including damages for actual loss and unjust

enrichment caused by the misappropriation. Alternatively, RSMW is entitled to damages measured by royalty payments for the unauthorized disclosure or use of the trade secrets. Given Pacilio and Besse's willful and malicious misappropriation, RSMW seeks an award of exemplary damages not exceeding twice any award. RSMW also seeks to preliminarily and permanently enjoin Pacilio and Besse from any further misappropriation.

**COUNT II**
**Violation of the Computer Fraud and Abuse Act (CFAA)**

59.     RSMW incorporates the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60.     RSMW uses its computers in interstate commerce. RSMW's computers are protected computers within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

61.     On information and belief, Pacilio and Besse intentionally accessed RSMW's computers without authorization following their termination. This included deliberately accessing and obtaining RSMW confidential client information in computerized databases, and transferring that information outside of RSMW to their own possession.

62.     Pacilio and Besse accessed RSMW's computers in furtherance of their campaign to solicit RSMW clients for their own commercial advantage and private financial gain.

63.     Pacilio and Besse's conduct constitutes a violation of the CFAA, and has caused damage and losses to RSMW in excess of $5,000.

64.     As a direct and proximate result of Pacilio and Besse's conduct, RSMW has and will continue to suffer damages and losses.

65.     Unless enjoined, Pacilio and Besse will continue to engage in such conduct, and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.

### COUNT III
**Violation of the Lanham Act**

66.     RSMW incorporates the allegations contained in paragraphs 1 through 65 above as if fully set forth herein.

67.     RSMW purchased, owns, and uses the "Clapboard Hill Advisors" mark. "Clapboard Hill Advisors" or "Clapboard" is a valid mark entitled to protection.

68.     Pacilio and Besse have contacted numerous clients of RSMW and offered to provide advisory services under the name and logo "Clapboard Hill Private Wealth."

69.     "Clapboard Hill Private Wealth" is derivative of and confusingly similar to "Clapboard Hill Advisors, LLC."

70.     Pacilio and Besse's use of the name and logo "Clapboard Hill Private Wealth" is likely to cause confusion, to cause mistake, or to deceive as to their affiliation, connection, or association with RSMW, or as to the origin, sponsorship, or approval of Pacilio and Besse's services by RSMW.

71.     Pacilio and Besse's use of the name and logo "Clapboard Hill Private Wealth" constitutes unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).

72.     Pacilio and Besse's breaches of the Lanham Act were willful, deliberate, and intentional.

73.     As a direct and proximate result of Pacilio and Besse's breach of the Lanham Act, RSMW has and will continue to suffer damages and losses.

74.     Unless enjoined, Pacilio and Besse will continue to breach the Lanham Act, and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.

75.     Based upon Pacilio and Besse's conduct, RSMW seeks to recover Pacilio and Besse's profits, damages sustained by RSMW, the costs of this action, and attorneys' fees, as well as a preliminary and permanent injunction prohibiting Pacilio and Besse from using the "Clapboard Hill Private Wealth" name and logo.

## COUNT IV
**Breach of APA**

76.     RSMW incorporates the allegations contained in paragraphs 1 through 75 above as if fully set forth herein.

77.     The APA is a valid and binding contract between RSMW, Pacilio, and Besse.

78.     RSMW has fully performed and complied with all of its contractual obligations under the APA.

### *Covenant Not to Compete or Solicit Business*

79.     The APA includes a covenant not to compete or solicit business "to protect and preserve the going concern value of the Business and the Purchased Assets."  The Section makes clear that RSMW "would not have entered into this Agreement absent" the covenant not to compete or solicit.  APA § 8.1(a).

80.     The Section prohibits Pacilio and Besse from engaging in acts that "induce, directly or indirectly, any client or other business relationship to terminate or adversely modify its relationship" with RSMW for a period of four years from the closing date.  APA § 8.1(a)-(a)(i).  The Section further prohibits Pacilio and Besse from owning any interest in, managing, operating, controlling, participating in, advising, consulting or otherwise carrying on, performing

services for, directly or indirectly any business competitive with RSMW's business.  APA §
8.1(a)(i).

81.    Pacilio and Besse have materially breached the covenant not to compete or solicit
by:

      a.      Launching a new wealth management business that directly competes with
RSMW.

      b.      Engaging in a widespread campaign to solicit RSMW clients for the
purpose of diverting them from RSMW, including through letters, phone
calls, and emails.

      c.      Providing transfer documents to RSMW clients and instructing them to
transfer their funds to Pacilio and Besse, so that Pacilio and Besse can take
over management of their accounts.

82.    Pacilio and Besse's breach of the covenant not to compete or solicit was willful,
deliberate, and intentional

83.    As a direct and proximate result of Pacilio and Besse's breach of the non-compete
and non-solicitation Section, RSMW has and will continue to suffer damages and losses,
including but not limited to the loss of business from clients, the loss of its competitive
advantage, and the loss of revenues and profits it otherwise would have earned.

84.    Unless enjoined, Pacilio and Besse will continue to breach the non-compete and
non-solicitation Section, and RSMW will suffer additional substantial and irreparable damage
that remedies at law cannot fully or adequately compensate.

85.    Based upon Pacilio and Besse's breaches and pursuant to the specific relief
provided by Section 8.1(c) of the APA, RSMW seeks a preliminary and permanent injunction to

enforce this Agreement for the remainder of the non-compete and non-solicitation period, as well as money damages.

### *Non-Disparagement*

86.     The APA includes a non-disparagement clause "to protect and preserve the going concern value of the Business and the Purchased Assets."  The Section makes clear that RSMW "would not have entered into this Agreement absent" the clause.  APA § 8.1(a).

87.     Specifically, the Section prohibits Pacilio and Besse from engaging in any act that "defames, disparages or in any way materially criticizes [RSMW] … or [is] designed or intended to have the effect of discouraging" any clients from having business relations with RSMW for a period of four years from the closing date.  APA § 8.1(a), (a)(iii).

88.     Pacilio and Besse have materially breached the covenant not to disparage by, among other things:

      a.     Stating to RSMW clients that RSMW is unable to meet their needs.

      b.     Stating to RSMW clients that Pacilio and Besse could not fulfill their fiduciary responsibilities to these clients while at RSMW.

      c.     Stating to one or more RSMW clients that "the real compliance issue is that RSM investment options are not sufficient to serve clients."

      d.     Stating to one or more RSMW clients that RSMW will be "moving them into bond funds, which are less tax efficient and not in alignment" with client interests.

89.     Pacilio and Besse's breach of the non-disparagement clause was willful, deliberate, and intentional.

90. As a direct and proximate result of Pacilio and Besse's breach of the non-disparagement Section, RSMW has and will continue to suffer damages and losses, including but not limited to the loss of business from clients, the loss of its competitive advantage, and the loss of revenues and profits it otherwise would have earned.

91. Unless enjoined, Pacilio and Besse will continue to breach the non-disparagement Section, and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.

92. Based upon Pacilio and Besse's breaches and pursuant to the specific relief provided by Section 8.1(c) of the APA, RSMW seeks a preliminary and permanent injunction to enforce this Agreement for the remainder of the non-disparagement period, as well as money damages.

### *Use of Firm Name*

93. Under Section 8.2(a), Pacilio and Besse are obligated to prohibit the "continued operation and use of the name 'Clapboard Hill Advisors, LLC' . . . (or any derivative or variation thereof, or other name that is confusingly similar . . .)," except for purposes of winding up its business affairs.

94. Pacilio and Besse have materially breached this Section by writing letters to numerous clients of RSMW and offering to provide advisory services under the name and logo "Clapboard Hill Private Wealth."

95. "Clapboard Hill Private Wealth" is a derivative of "Clapboard Hill Advisors, LLC."

96. In addition, "Clapboard Hill Private Wealth" is confusingly similar to "Clapboard Hill Advisors, LLC."

97.     Section 8.2(b) also precludes Pacilio and Besse from using the term "Clapboard" as a trademark, trade name, or corporate name for the provision of any client services.

98.     Again, Pacilio and Besse have materially breached this Section by writing letters to numerous clients of RSMW and offering to provide services under the trademark and corporate name "Clapboard Hill Private Wealth."

99.     Pacilio and Besse's breaches of Section 8.2(a) were willful, deliberate, and intentional.

100.    As a direct and proximate result of Pacilio and Besse's breach of Section 8.2(a), RSMW has and will continue to suffer damages and losses.

101.    Unless enjoined, Pacilio and Besse will continue to breach Section 8.2(a), and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.

102.    Based upon Pacilio and Besse's breaches, RSMW seeks a preliminary and permanent injunction to enforce this Agreement, as well as money damages.

## COUNT V
### Breach of Employment Agreements

103.    RSMW incorporates the allegations contained in paragraphs 1 through 102 above as if fully set forth herein.

104.    The Employment Agreements are valid and binding contracts between, respectively, RSMW and Pacilio and RSMW and Besse.

105.    RSMW has fully performed and complied with all of its contractual obligations under the Employment Agreements.

### *Covenant Not to Solicit Business*

106.    The Employment Agreements include a covenant not to solicit business, which prohibits Pacilio and Besse from engaging in acts that either directly or indirectly "solicit, divert, take away or conduct any financial planning, financial consulting, investment advisory, securities brokerage or insurance business with," or attempt to "solicit, divert, takeaway or conduct any financial planning, financial consulting, investment advisory, securities brokerage or insurance business" with any of RSMW's clients.

107.    Pacilio and Besse have materially breached the covenant not to solicit by:

a.    Engaging in a widespread campaign to solicit RSMW clients for the purpose of diverting them from RSMW, including through letters, phone calls, and emails.

b.    Conducting and attempting to conduct financial planning, financial consulting, investment advisory, securities brokerage and/or insurance business with RSMW clients under a new corporate name, Clapboard Hill Private Wealth.

108.    Pacilio and Besse's breach of the covenant not to solicit was willful, deliberate, and intentional.

109.    As a direct and proximate result of Pacilio and Besse's breach of the non-solicitation provision, RSMW has and will continue to suffer damages and losses, including but not limited to the loss of business from clients, the loss of its competitive advantage, and the loss of revenues and profits it otherwise would have earned.

110.    Unless enjoined, Pacilio and Besse will continue to breach the non-solicitation provision, and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.

111.    Based upon Pacilio and Besse's breaches and pursuant to the specific relief provided by Paragraph 9 of the Employment Agreements, RSMW seeks a preliminary and permanent injunction prohibiting Pacilio and Besse from violating their obligations under the Agreements, recovery of damages incurred in enforcing the Agreements (including costs, attorneys' fees, and litigation expenses), and liquidated damages.

### *Use of Trade Secrets or Other Confidential Information*

112.    The Employment Agreements explicitly prohibit, during or after employment, the use or disclosure of any trade secrets or other Confidential Information learned or obtained while an RSMW employee.

113.    Pacilio and Besse have materially breached the terms of their Employment Agreements by using, after being terminated by RSMW, RSMW's trade secrets or other Confidential Information, including confidential client information that they learned or obtained while employed by RSMW.

114.    Pacilio and Besse's breaches of the Employment Agreements were willful, deliberate, and intentional.

115.    As a direct and proximate result of Pacilio and Besse's breaches of their Employment Agreements, RSMW has and will continue to suffer damages and losses.

116.    Unless enjoined, Pacilio and Besse will continue to breach their Employment Agreements, and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.

117.     Based upon Pacilio and Besse's breaches and pursuant to the specific relief provided by Paragraph 9 of the Agreement, RSMW seeks a preliminary and permanent injunction prohibiting Pacilio and Besse from violating their obligations under the Agreement, recovery of damages incurred in enforcing the Agreement (including costs, attorneys' fees, and litigation expenses), and liquidated damages.

## COUNT VI
### Violation of the Connecticut Uniform Trade Secrets Act (CUTSA), or in the alternative, the Minnesota Uniform Trade Secrets Act (MUTSA)

118.     RSMW incorporates the allegations contained in paragraphs 1 through 117 above as if fully set forth herein.

119.     RSMW has invested, and continues to invest, considerable amounts of time and energy in acquiring, creating, and developing confidential and trade secret information, including client lists and the client information contained in computerized databases.

120.     This information derives significant independent economic value, actual or potential, to RSMW from not being generally known to or readily ascertainable by proper means by its competitors.

121.     At all relevant times, RSMW has taken measures to safeguard the secrecy of its confidential and trade secret information, including by requiring its employees to enter into agreements to maintain their confidentiality, and password-protecting its computer systems, networks, and databases.

122.     The above-described information constitutes trade secrets pursuant to the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50, and the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01.

123.     Pacilio and Besse have willfully and maliciously misappropriated RSMW's trade secrets, in violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. § 35-50 *et seq.* and the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01 *et seq.*

124.     Pacilio and Besse used RSMW's trade secrets without RSMW's express or implied consent, when they knew or had reason to know that they had acquired the information under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

125.     As a direct and proximate result of the wrongful actions of Pacilio and Besse, RSMW has been caused to suffer irreparable harm, including damages for actual loss and unjust enrichment caused by the misappropriation.  Alternatively, RSMW is entitled to damages measured by royalty payments for the unauthorized disclosure or use of the trade secrets.  Given Pacilio and Besse's willful and malicious misappropriation, RSMW seeks an award of punitive damages not exceeding twice any award, and reasonable attorney's fees.  RSMW also seeks to preliminarily and permanently enjoin Pacilio and Besse from any further misappropriation.

## <u>COUNT VII</u>
### Violation of Connecticut Computer-Related Offenses Statute

126.     RSMW incorporates the allegations contained in paragraphs 1 through 125 above as if fully set forth herein.

127.     Pacilio and Besse deliberately accessed RSMW or RSMW-owned computer systems without authorization, knowing that they were not authorized to do so.  This included accessing and obtaining RSMW client information in computerized databases.

128.     Pacilio and Besse misused computer system information.  As a result of accessing RSMW or RSMW-owned computer systems, they intentionally made unauthorized copies of

RSMW client information.  Pacilio and Besse knowingly retained the unauthorized copies of client information, and used that information for their own personal gain.

129.    Pacilio and Besse's conduct constitutes computer crimes, in violation of Conn. Gen. Stat. §§ 52-570b, 53a-251.

130.    Pacilio and Besse's conduct was wanton, willful, malicious, and in conscious disregard of RSMW's rights.

131.    As a direct and proximate result of Pacilio and Besse's conduct, RSMW has and will continue to suffer damages and losses.  As authorized by Conn. Gen. Stat. § 52-570b, RSMW seeks treble damages (including actual damages and unjust enrichment), and reasonable costs and attorneys' fees.

132.    Unless enjoined, Pacilio and Besse will continue to engage in such conduct, and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.  RSMW seeks to preliminarily and permanently enjoin Pacilio and Besse from any further conduct that violates the aforementioned statutes.

## COUNT VIII
### Violation of the Connecticut Unfair Trade Practices Act (CUTPA)

133.    RSMW incorporates the allegations contained in paragraphs 1 through 132 above as if fully set forth herein.

134.    Pacilio and Besse have engaged in trade and commerce by the conduct described above and continue to engage in such conduct, as defined in Conn. Gen. Stat. § 42-110a(4).

135.    Pacilio and Besse's use of the "Clapboard" trademark in their letters to RSMW's clients, combined with their adoption of a confusingly similar name for their new entity "Clapboard Hill Private Wealth," constitutes deceptive acts and practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a through 42-110q.

136.    Pacilio and Besse's use of RSMW's confidential information, including client information, to launch their own business to compete with RSMW and to solicit RSMW clients in an attempt to divert them from RSMW also constitutes deceptive acts and practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a through 42-110q.

137.    Pacilio and Besse violated the CUTPA for the purpose of competing unfairly with RSMW.

138.    As a result of Pacilio and Besse's violations of the CUTPA, RSMW continues to suffer damages in an amount that cannot be presently determined.

139.    Pacilio and Besse's conduct was wanton, willful, malicious, and in conscious disregard of RSMW's rights.  As a result, RSMW is entitled to punitive damages.

### COUNT IX
### Tortious Interference with Contract and/or Business Relations

140.    RSMW incorporates the allegations contained in paragraphs 1 through 139 above as if fully set forth herein.

141.    RSMW has substantial and ongoing contractual and/or business expectancy relationships with its clients that Pacilio and Besse have diverted and/or are actively attempting to divert from RSMW.

142.    RSMW has an existing contractual relationship with its clients, including those client relationships it purchased as assets pursuant to the APA and those that it developed independently.

143.    Pacilio and Besse knew of RSMW's contractual and/or business expectancy relationships with its clients.

144.     Pacilio and Besse wrongfully, without privilege or justification, interfered with RSMW's contractual and/or business expectancy relationships with RSMW's clients by pursuing and soliciting RSMW's clients.  Their purposeful conduct was intended to harm RSMW's existing contractual and/or business expectancy relationships.

145.     Pacilio and Besse's conduct was wanton, willful, malicious, and in conscious disregard of RSMW's rights.

146.     As a direct and proximate result of Pacilio and Besse's tortious interference, RSMW has and will continue to suffer damages and losses, including but not limited to the loss of business from clients, the loss of its competitive advantage, and the loss of revenues and profits it otherwise would have earned.

147.     Unless enjoined, Pacilio and Besse will continue to tortiously interfere with RSMW's contract and/or business relations, and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.

148.     RSMW seeks a preliminary and permanent injunction to prohibit further tortious interference, as well as money damages.

## <u>COUNT X</u>
## Tortious Interference with Prospective Business Relations

149.     RSMW incorporates the allegations contained in paragraphs 1 through 148 above as if fully set forth herein.

150.     RSMW has reasonable expectations of prospective business relations with clients and potential clients that Pacilio and Besse have diverted and/or are actively attempting to divert from RSMW.

151.     Pacilio and Besse knew of RSMW's prospective business relations with its clients and potential clients.

152.    Pacilio and Besse intentionally interfered with RSMW's prospective business relations by wrongfully pursuing and soliciting RSMW's clients and potential clients.

153.    In the absence of Pacilio and Besse's wrongful conduct, it is reasonably probable that RSMW would have realized its prospective business relations with clients and potential clients.

154.    Pacilio and Besse's conduct was wanton, willful, malicious, and in conscious disregard of RSM's rights.

155.    As a direct and proximate result of Pacilio and Besse's tortious interference, RSMW has and will continue to suffer damages and losses, including but not limited to the loss of business from clients, the loss of its competitive advantage, and the loss of revenues and profits it otherwise would have earned.

156.    Unless enjoined, Pacilio and Besse will continue to tortiously interfere with RSMW's prospective business relations, and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.

157.    RSMW seeks a preliminary and permanent injunction to prohibit further tortious interference, as well as money damages.

**COUNT XI**
**Breach of Fiduciary Duties**

158.    RSMW incorporates the allegations contained in paragraphs 1 through 157 above as if fully set forth herein.

159.    As former RSMW employees, Pacilio and Besse owed and continue to owe fiduciary duties to RSMW, including the duties of loyalty and confidentiality.  By virtue of their positions, RSMW instilled in Pacilio and Besse special trust and confidence and granted them access to trade secrets and other confidential or proprietary information belonging to RSMW.

160.   Pacilio and Besse have breached their fiduciary duties to RSMW by, among other things, (a) appropriating and utilizing for their own use confidential or proprietary information belonging to RSMW, and (b) utilizing such confidential or proprietary information for their own personal gain.

161.   As a direct and proximate result of Pacilio and Besse's breaches of their fiduciary duties, RSMW has and will continue to suffer damages and losses.

162.   Pacilio and Besse's conduct was wanton, willful, malicious, and in conscious disregard of RSMW's rights.  As a result, RSMW is entitled to punitive damages.

163.   Unless enjoined, Pacilio and Besse will continue to breach their fiduciary duties, and RSMW will suffer additional substantial and irreparable damage that remedies at law cannot fully or adequately compensate.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, RSMW requests that this Court grant the following relief:

1)   enter judgment in favor of RSMW on each of the above counts;

2)   award RSMW liquidated damages, as provided for in the Employment Agreements, in an amount to be determined but for no less than $5,000,000;

3)   award RSMW compensatory damages;

4)   award RSMW preliminary and permanent injunctive relief requiring Pacilio and Besse to return all RSMW data and property, including but not limited to confidential, proprietary and/or trade secret information, and prohibiting Pacilio and Besse from using and/or disclosing any such information;

5)      award RSMW preliminary and permanent injunctive relief prohibiting Pacilio and

Besse from further violating federal law, the APA, their Employment Agreements, and state law,

as set forth above;

6)      award RSMW exemplary and/or punitive damages;

7)      award RSMW its costs and its reasonable attorneys' fees;

8)      award pre- and post-judgment interest on all damage awards; and

9)      award RSMW such other and further relief as this Court deems just.

## **DEMAND FOR JURY TRIAL**

RSMW respectfully requests a trial by jury.


Dated:  May 7, 2018                             Respectfully submitted,


                                                /s/ Brian A. Daley
                                                Marc J. Kurzman (ct01545)
                                                Brian Daley (ct24550)
                                                Carmody Torrance Sandak & Hennessey LLP
                                                707 Summer Street
                                                Stamford, CT 06901-1026
                                                Telephone:   (203) 252-2680
                                                Facsimile:  (203) 325-8608
                                                MKurzman@carmodylaw.com
                                                BDaley@carmodylaw.com

                                                Fatima Lahnin (ct24096)
                                                Carmody Torrance Sandak & Hennessey LLP
                                                195 Church Street
                                                New Haven, CT 06509-1950
                                                Telephone:   (203) 784-3116
                                                Facsimile:  (203) 784-3199
                                                FLahnin@carmodylaw.com

-AND-

Stephen J. Fuzesi (*pro hac vice* forthcoming)
Michelle Chen (*pro hac vice* forthcoming)
Nita Rao (*pro hac vice* forthcoming)
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Telephone:   (202) 434-5000
Facsimile:  (202) 434-5029
sfuzesi@wc.com
mchen@wc.com
nrao@wc.com

*Counsel for RSM US Wealth Management LLC*